L. & E. STIRN, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86115.  Promulgated January 19, 1939.

*Andrew B. Trudgian, Esq.*, for the petitioner.
*Thomas H. Lewis, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $13,352.21 in the petitioner's income tax for the fiscal year ended November 30, 1932.  One of the adjustments which he made in determining that deficiency was the addition to income of $136,280.31 as profit on redemption of bonds.  The only issue for decision is whether or not the Commissioner erred in making that particular adjustment.  The facts are found as stipulated by the parties.

L. & E. Stirn, a partnership, acquired 4,636 shares of 7 percent cumulative preferred stock of Concordia-Gallia Corporation on December 1, 1929.  Those shares had a basis for gain or loss in the hands of the partnership of $327,319.69.  The preferred and common stockholders of the Concordia-Gallia Corporation held a special meeting on December 1, 1931, at which it was agreed that the 4,636 shares of 7 percent cumulative preferred stock of the corporation held by L. & E. Stirn, the partnership, and representing 55.08 percent of the total shares of that class of stock outstanding, could be retired by issuing therefor 6 percent debenture bonds of the corporation of the total face value of $463,600.  They also agreed that the

authorized preferred capital stock should be reduced from $1,000,000, represented by 10,000 shares, to $400,000, represented by 4,000 shares. The partnership of L. & E. Stirn owned at that time 64.55 percent of the outstanding common stock of the corporation. The transactions were carried out promptly as agreed upon by the stockholders. No other stock of the corporation was retired at that time. The partnership, also purchased at that time from the corporation additional 6 percent debenture bonds of the latter at their face value for $36,400. The fair market value of the bonds at that time was equal to their face value. One-fifth of the bonds were to be retired at the end of each year.

The petitioner, L. & E. Stirn, Inc., was incorporated on June 3, 1932. The partnership of L. & E. Stirn then transferred assets to the petitioner, including the debenture bonds of the Concordia-Gallia Corporation having a face value of $500,000, solely in exchange for stock of the petitioner, and immediately after the exchange the partnership was in control of the corporation. The petitioner thereafter became indebted to the Concordia-Gallia Corporation in the amount of $500,000, and on September 30, 1932, it surrendered the $500,000 face value of debenture bonds to the corporation in discharge of its debt of $500,000 to that corporation and the bonds were thereupon retired.

The parties are in agreement that the basis of the partnership for gain or loss upon the 4,636 shares of 7 percent cumulative preferred stock was $327,319.69. The Commissioner has held that the debentures, received by the partnership in exchange for that preferred stock, retained in the hands of the partnership the same basis for gain or loss as the stock had had. He then added the cost of additional debentures purchased for $36,400, to arrive at a figure of $363,719.69, representing the basis for gain or loss which the $500,000 of debentures had in the hands of the partnership. He further held that the debentures had the same basis for gain or loss in the hands of the petitioner, and computed a profit to the petitioner of the difference between that cost and $500,000, the amount of the debt canceled by the surrender of the bonds for retirement.

The taxable year involved is a fiscal year which began during 1931 and ended during 1932, so that both the Revenue Act of 1928 and the Revenue Act of 1932 must be considered. However, as the petitioner concedes, there is no material difference in the acts in so far as this case is concerned.

The exchange of the $500,000 face value of debentures by the partnership to the petitioner was a nontaxable exchange within the provisions of section 112(b)(5) of the Revenue Act of 1932, and, because of the provision of section 113(a)(8), the basis which the

debentures had in the hands of the petitioner was the same as it had been in the hands of the partnership. Obviously, the $36,400 face value of the debentures which were purchased for cash had a basis of their cost, or $36,400. So far the parties are not in disagreement. The real question in the case is, Was the basis of the partnership for gain or loss on the remaining debentures the fair market value of those debentures at the time they were acquired by the corporation, to wit, $463,600, or was that basis the same as that of the preferred stock which was exchanged for those debentures, to wit, $327,319.69? The Commissioner contends that the basis was the latter and lower figure. He argues that there was a recapitalization of the Concordia-Gallia Corporation on December 1, 1931, and, therefore, a reorganization of that corporation within the definition contained in section 112(i)(1)(C); no gain or loss resulted to the partnership by reason of the provisions of section 112(b)(3); and, by reason of section 113(a)(6), the basis of the property acquired by the partnership (the debentures) is the same as that of the property exchanged (the preferred stock). The last sentence of section 113(a)(6) does not apply. The argument of the respondent is irresistible.

The petitioner suggests four questions and contends that if any one of the four is to be answered in the negative, then the determination of the Commissioner necessarily must have been in error. The first question he asks is, Was the retirement of the preferred stock of the Concordia-Gallia Corporation, surrendered for the debenture bonds, a recapitalization, and therefore, a reorganization within the meaning of section 112(i)(1)(C) of the Revenue Acts of 1928 and 1932? The term "recapitalization" is not defined in those acts. However, there was in this case clearly a change of capitalization. The preferred stock was surrendered and retired and the amount of authorized preferred stock was reduced from $1,000,000 to $400,000. The material change in capitalization was a recapitalization. *Lelia S. Kirby*, 35 B. T. A. 578. There was at least one important difference between the preferred stock and the debentures. A holder of a share of preferred stock was a stockholder, whereas the holder of a debenture was a creditor of the corporation. The fact that the capital of the corporation was reduced rather than increased, does not seem to be material. We find nothing in the dictionary definitions of "capitalize" quoted in the petitioner's brief to show any error in our conclusion that here there was a recapitalization within the meaning and intendment of section 112(i)(1)(C). Therefore, the answer to the petitioner's first question is in the affirmative.

The next question is, Were the debenture "securities" within the intent of section 112(b)(3)? The resolution of the stockholders of December 1, 1931, provided that one-fifth of the total of the deben-

tures should mature in one year from the date of issuance, and one-fifth should mature in each succeeding year thereafter. The petitioner points out that in *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U. S. 599, a series of promissory notes all maturing within fourteen months of the date of issuance were held not to be securities within the meaning of a similar provision of an earlier act. It also cites *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462, where the Court held that short term notes all payable within four months were not "securities" but were a mere evidence of an obligation to pay the purchase price agreed upon in a sale. The present case is distinguishable from those cases. The resolution of December 1, 1931, further provided "that such bonds shall be issued upon the payment of the par value thereof to the corporation, or in the alternative, upon the exchange for the seven per cent. preferred stock of this corporation held and owned by L. & E. Stirn, such exchange to be made at the par value of such stock at the rate of one hundred ($100) dollars per share." Here there was an exchange rather than a sale. The debentures were not short term promissory notes and they were not mere evidence of an obligation to pay the purchase price agreed upon in a sale. Cf. *Lucien H. Tyng*, 36 B. T. A. 21, 27. The evidence does not show that they were not in a true sense securities of the issuing corporation within the meaning of the statutes.

The petitioner's next question is whether the transaction was an "exchange" within the meaning and intent of section 112(b). It contends that the transaction was a sale and quotes the following as the dictionary definition of an "exchange": "Act of giving or taking one thing in return for another regarded as an equivalent." It seems obvious that in the light of the provisions of section 112, where sales are contrasted with exchanges, and also in the light of the generally recognized understanding of the two words, this transaction was an exchange rather than a sale. The retirement of the debentures in September was a subsequent event which did not affect the nature of the transaction in June.

The next question which the petitioner asks is, Was the transaction a nontaxable one within the intent of section 112(b)? Here it cites *Gregory* v. *Helvering*, 293 U. S. 465, but we are unable to see the applicability of the situation. The transaction comes precisely within the terms of the statute and there is no suggestion that the transaction was not entered into for a business purpose.

*Decision will be entered for the respondent.*