Pan American Trust Company v. Commissioner.
PAN AM Trust Co. v. Commissioner
Docket No. 4474.
United States Tax Court
1945 Tax Ct. Memo LEXIS 183; 4 T.C.M. (CCH) 555; T.C.M. (RIA) 45183; May 28, 1945
*183 Max Rolnik, C.P.A., 21 West St., New York 6. N. Y., for the petitioner. Eilyne E. Strickland, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding was brought for a redetermination of a deficiency in petitioner's income tax for the year 1941 in the sum of $2,052.83. Only one issue is contested, that being whether a transaction entered into by petitioner pursuant to a plan of The Baltimore and Ohio Railroad Company for modification of interest charges and maturities on certain of its secured notes held by petitioner was within the non-recognition provisions of section 112 (b) (3) of the Internal Revenue Code. All of the facts are stipulated and are hereby found accordingly. Findings of Fact Petitioner, a corporation under the laws of New York, filed its income tax return with the collector of internal revenue for the second New York district. The Baltimore and Ohio Railroad Company, under an indenture dated August 1, 1934, issued five-year 4 1/2 percent secured notes due August 1, 1939, limited to the aggregate principal amount of $50,000,000. Some of the notes were coupon notes and some *184 were registered notes without coupons. Petitioner, in 1936, purchased $25,000 face value of the coupon notes at a cost of $25,000. Thereafter on August 15, 1938, The Baltimore and Ohio Railroad Company proposed a plan "For Modification of Interest Charges and Maturities" covering its funded debt, including the notes held by petitioner. The plan provided, among other things, the extension of the maturity of the notes from August 1, 1939, to August 1, 1944, and fixed interest during the period of the extension at the rate of 4 percent. The notes which had been redeemable as a whole on February 1, 1939, at 100 3/8 percent of their principal amount and accrued interest were redeemable as a whole at any time after August 1, 1939, on 30 days' notice at their principal amount and accrued interest. The collateral securing the notes was to remain unchanged except that the provisions of certain bonds constituting part of such collateral were to be modified as set out in the plan. In accordance with the provisions of the plan which were approved and confirmed by the District Court of the United States for the District of Maryland a supplemental indenture was executed January 1, 1940. In *185 February, 1940, pursuant to the decree of the Court and in accordance with the supplemental indenture petitioner surrendered its notes and there were annexed thereto extension agreements and new coupons, and notations were stamped on the notes referring to the supplemental indenture and to the extension agreement. The fair market value of petitioner's notes on February 20, 1940, after they were modified was $13,937.50. On July 2, 1941, petitioner sold notes having a face value of $5,000 for $2,810, and on December 15, 1941, it sold notes having a face value of $20,000 for $12,045. For 1941 petitioner deducted as a capital loss on its return the difference between the total sales price of $14,855 and the cost of $25,000. Respondent determined that the 1940 transaction involving the notes constituted an exchange of old notes for new notes on which gain or loss was to be recognized, and that the $13,937.50 fair market value of the modified notes represented their basis at the sale in 1941, and that a gain of $917.50 was realized under sales in 1941. Opinion That the prior transaction pursuant to which petitioner exchanged its notes for other notes of the same company was a "recapitalization, *186 " and hence a reorganization within the provisions of section 112 (g), follows inevitably from Sigmund Neustadi Trust, 43 B.T.A. 848, affirmed (C.C.A., 2nd Cir.), 131 Fed. (2d) 528. In order, however, for that transaction to have been tax free and thus enable petitioner to take the full loss in the year of sale, the notes must fall within the term "securities," as used in section 112 (b) (3). It is urged that since the new notes were redeemable on short notice, they must be treated as short-term obligations and hence fail to qualify as securities. But in the first place these obligations were not redeemable by the holder and if the debtor so determined, they would be five-year obligations, obviously far from the equivalent of cash. In Commissioner v. Freund (C.C.A., 3rd Cir.), 98 Fed. (2d) 201, secured bonds payable serially over six years were held not to be such short-term obligations as to preclude their treatment as "securities." L. & E. Stirn, Inc. v. Commissioner (C.C.A., 2nd Cir.), 107 Fed. (2d) 390 (reversing 39 B.T.A. 143, refers to the question as "whether bonds or notes which are exchanged represent an investment *187 in the business of the transferee or are a practical substitute for a cash sale," and comments upon "the difference * * * between obligations running for a considerable number of years and those payable within a short period and taken by the transferor not as an investment in the business of the transferee but as essentially a part of the purchase price." As we said in Sigmund Neustadt Trust, supra, * * * The purpose of the intricate provisions relating to reorganizations was to remove "the danger that taxable sales can be cast into the form of a reorganization, while at the same time legitimate reorganizations, required in order to strengthen the financial condition of the corporation, will be permitted." When we are required to deal with transfers of assets from one owner or group to another, the dangers first suggested must be recognized. * * * [citing cases] But here there was no transfer of assets, no change in corporate control, no possibility that a taxable sale was lurking in disguise. For the very reason that no change in ownership of the capital stock was proposed, the significance of the "continuity of interest" concept pales. And as to petitioners, their *188 interest as bondholders continued as such. In that posture of the facts the reorganization sections may thus safely be given the broadest possible scope; * * * We think the principle for which the Neustadt case stands requires that respondent's action in this respect be disapproved. Because of other adjustments, Decision will be entered under Rule 50.