## LAMBERTH v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9708.

Circuit Court of Appeals, Ninth Circuit.

May 22, 1941.

Joseph D. Brady, of Los Angeles, Cal. (John C. White and Milton K. Eckert, both of Washington, D. C., and Ray J. Coleman, of Los Angeles, Cal., of counsel) for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Arnold Raum, and Louise Foster, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is a petition by taxpayer for review of a decision of the Board of Tax Appeals sustaining a determination by the Commissioner of a deficiency of $132.11 in taxpayer's 1933 income taxes, and denying taxpayer's prayer that it be determined that he overpaid his 1933 income tax in the sum of $365.84.

The facts as found by the Board are not challenged by either party, and may be briefly outlined as follows:

On July 19, 1930, the taxpayer and his wife owned as community property, 3,334 shares of Class B Optional Series Common Stock [hereinafter referred to as Class B Common stock] of Interstate Cotton Industries, Inc., a Delaware corporation. The certificate of incorporation as of July 19, 1930, provided that all dividends declared upon Class B common stock should be paid by the issue of preferred stock of the corporation unless the holder of any share or shares of such stock should elect to receive any such dividend in cash and should notify the corporation of that election, in accordance with the requirement of the by-laws, in which event the dividend on such shares should be payable in cash. We are not advised as to the provisions of the by-laws of the corporation regarding the notice of election.

On July 19, 1930, the Board of Directors of the corporation declared dividends out of the earned surplus of the company, payable July 31, 1930, by resolution reading as follows:

"Resolved: That a dividend is hereby declared out of the earned surplus of this company on the outstanding common stock of the company payable July 31, 1930, to holders of said stock of record on the books of the company as follows: * * * [provisions dealing with dividends on a class of stock with which we are not here concerned.]

"Second: That a stock dividend of $31.50 payable in the Preferred stock of the company to be issued out of the authorized unissued shares of Preferred stock accruing from July 31, 1930, is declared on each share of Class B Optional Dividend Series Common stock in respect of which the record holder at the close of business of July 21, 1930, shall not have filed on or before said date an election to receive dividends thereon in cash, and

"Third: A cash dividend of $31.50 on each outstanding share of Class B Optional Dividend Series common stock in respect of which the record holder at the close of business of July 21, 1930, shall have filed on or before said date an election to receive dividends in cash; and

"Be It Further Resolved: That the Secretary of the Company be instructed to give immediate notice to all holders of Class B Common stock by delivering written notice in person or obtaining from him his written statement as to his election in exercising his option as hereinabove set forth. * * *"

The taxpayer and his wife as owners of the 3,334 shares of Class B common stock did not notify the corporation of any election to receive the dividend in cash, and therefore received 1,050.21 shares of preferred stock from the corporation on July 31, 1930. On the same day they purchased an additional 79/100 of a share from the corporation for cash in the amount of $79. Neither taxpayer nor his wife reported the receipt of the dividend in his 1930 income tax return.

At the time of the payment of the dividend the corporation had ample cash to have paid in full all of the Class B common stockholders, including taxpayer and his wife, if all of the stockholders had elected to take the dividend in cash. There was no understanding or agreement between the taxpayer or his wife and the corporation or any person prior to or between July 19 and July 21, 1930, that they or any other holders of Class B common stock would receive stock rather than cash, or cash rather than stock.

On June 30, 1932, all of the stockholders of Interstate Cotton Industries, Inc., entered into an agreement in writing under

which common stockholders contributed $1 per share in cash to the company and preferred stockholders contributed proportionately by surrender of preferred stock, cancellation of obligations, and payment of cash, and under which the taxpayer and his wife surrendered 332 shares of preferred stock which were a portion of the 1,051 shares acquired by them on July 31, 1930, leaving in their hands 719 shares. In addition to the 332 shares of stock surrendered, the taxpayer and his wife as preferred stockholders contributed $27.88 in cash to the corporation. Taxpayer and his wife retained the 719 shares of preferred stock until July 31, 1933. On the last mentioned date 41 of the 719 shares were retired by the corporation, the taxpayer and his wife receiving in cash the sum of $4,100.00.

There is not a copy of the taxpayer's income tax return in the record before us, but it appears from the Commissioner's deficiency notice that the taxpayer reported and paid a tax of $167.51 on $1,340.09 capital gain from the retirement of the stock above referred to. It also appears from the deficiency notice that the taxpayer had theretofore filed two claims for refund, in the amounts of $285.93 and $365.84 respectively. The basis of his claims is not shown by the record.

In the Commissioner's deficiency notice he disallowed the claims for refund, and assessed a deficiency of $294.98. We quote from the notice:

"(a) Dividends reported in your return in the amount of $1,656.98 have been increased by $2,050.00, representing your one-half community share of $4,100 received in the taxable year in retirement of preferred stock of the Interstate Cotton Industries, Incorporated. The Bureau holds that this amount received by you in redemption of 20.5 shares of the stock [½ x 41] is taxable as an ordinary dividend, in accordance with the provisions of section 115(g) of the Revenue Act of 1932. * * *"

Section 115(g) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 521, read, at the time involved, as follows:

"Redemption of Stock. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a tax-

able dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."

The taxpayer filed a petition with the Board of Tax Appeals for redetermination of the deficiency, asserting that the Commissioner erred in holding that the $2,050 received in retirement of the stock referred to was taxable as an ordinary dividend, and in failing to determine that the sum was received in partial liquidation and retirement of such stock. It also asserted that the Commissioner should have determined that the cost basis for such stock was $146.214 per share and that a loss of $46.214 per share resulted to the taxpayer from its surrender.

In an Amended Answer filed by the Commissioner, it is stated:

"9. In computing the tax liability of the petitioner for the year 1933, the respondent treated the petitioner's portion of the said $4,100 cash as being essentially equivalent to the distribution of a taxable dividend and taxed the same as such under the provisions of Section 115(g) of the Revenue Act of 1932.

"10. Respondent now avers that the receipt of the said $4,100 by the community is not essentially equivalent to the receipt of a taxable dividend but constitutes a sale of the said 41 shares of stock of the Interstate Cotton Industries, Inc. to said Interstate Cotton Industries, Inc., and the gain or loss on this transaction should be computed under the provisions of Section 101 of the Revenue Act of 1932."

Section 101 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 504, provided, at the time here involved:

"(a) Tax in Case of Capital Net Gain. In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: [rates of tax].

"(b) Tax in Case of Capital Net Loss. In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall be levied, collected, and paid, in lieu of all

other taxes imposed by this title, a tax determined as follows: * * *

"(c) Definitions. For the purposes of this title—

"(1) 'Capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.

"(2) 'Capital loss' means deductible loss resulting from the sale or exchange of capital assets. * * *

"(8) 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. * * *"

Section 111 of the. Act, 26 U.S.C.A. Int.Rev.Acts, page 510, provides for the method of determination of the amount of gain or loss, as follows:

"(a) Computation of Gain or Loss. Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b), and the loss shall be the excess of such basis over the amount realized."

Section 113, 26 U.S.C.A. Int.Rev.Acts, page 514, read at the time involved, so far as here material:

"Adjusted Basis for Determining Gain or Loss

"(a) Basis (Unadjusted) of Property. The basis of property shall be the cost of such property; except that—[exceptions contained in the 1932 Act are immaterial in the instant case].

"(b) Adjusted Basis. The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided. * * *"

In the Commissioner's amended answer above referred to, the position was taken that the 1,051 shares of stock received by the taxpayer and his wife in 1932 constituted a stock dividend, and that in determining the gain or loss on a subsequent sale thereof the cost basis was zero, under the rule of Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224.

The taxpayer, on the other hand, urged that the shares were not received as a stock dividend, but that under the applicable law he and his wife received in 1930 a cash dividend with which they purchased the stock at $100 per share. On this theory he maintained that the cost basis in determining the gain or loss was this $100 plus the amount of subsequent capital contributions, totaling $146.214 per share. Thus, the shares were not sold at a profit, but rather at a loss of $46.214 each.

The Board of Tax Appeals upheld the Commissioner's position that the stock was received by the taxpayer as a stock dividend, saying [42 B.T.A. 438, 443]: "Until and unless petitioners made an election on or before July 21 to receive cash, they were only entitled by the terms of the resolution of July 19 to receive a stock dividend on July 31. They made no such election. Therefore, on July 31, when the dividend was to be distributed, they could receive only a stock dividend and this they did receive."

In the briefs filed by the Commissioner before this Court, the Commissioner has departed from his position that the cost basis of the stock is zero, and urges that Section 214 of the Revenue Act of 1939, c. 247, 53 Stat. 862, 26 U.S.C.A. Int.Rev. Acts, page 1179, is applicable. The cited section reads:

"§ 214. Basis of stock dividends and stock rights

"(a) Basis under internal revenue code. Section 113(a) of the Internal Revenue Code (relating to the unadjusted basis of property) is amended by inserting at the end thereof the following new paragraph:

"'(19) (a) If the property was acquired by a shareholder in a corporation and consists of stock in such corporation, or rights to acquire such stock, acquired by him after February 28, 1913, in a distribution by such corporation (hereinafter in this paragraph called "new stock"), or consists of stock in respect of which such distribution was made (hereinafter in this paragraph called "old stock") and

"'(i) the new stock was acquired in a taxable year beginning before January 1, 1936; or

"'(ii) the new stock was acquired in a taxable year beginning after December 31, 1935, and its distribution did not constitute income to the shareholder within the

meaning of the Sixteenth Amendment to the Constitution;

then the basis of the new stock and of the old stock, respectively, shall, in the shareholder's hands, be determined by allocating between the old stock and the new stock the adjusted basis of the old stock; such allocation to be made under regulations which shall be prescribed by the Commissioner with the approval of the Secretary.'

\* \* \*

"(e) Basis under prior acts. The following rules shall be applied, for the purposes of the Revenue Act of 1938 or any prior revenue Act as if such rules were a part of each such Act when it was enacted, in determining the basis of property acquired by a shareholder in a corporation which consists of stock in such corporation, or rights to acquire such stock, acquired by him after February 28, 1913, in a distribution by such corporation (hereinafter in this subsection called 'new stock'), or consisting of stock in respect of which such distribution was made (hereinafter in this subsection called 'old stock') if the new stock was acquired in a taxable year beginning before January 1, 1936, or acquired in a taxable year beginning after December 31, 1935, and its distribution did not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution:

" '(1) The basis of the new stock and of the old stock, respectively, shall, in the shareholder's hands, be determined by allocating between the old stock and the new stock the adjusted basis of the old stock; such allocation to be made under regulations which shall be prescribed by the Commissioner with the approval of the Secretary.' "

It will readily be seen that if the Commissioner's contention that the stock acquired by the taxpayer and his wife constituted in fact a stock dividend, the quoted provisions of the 1939 Act are by its terms applicable.

The taxpayer raises a question as to the constitutionality of these provisions of the 1939 Act if they are applied retroactively. However, in the view that we take of the case as hereinafter set forth, we need not decide that question.

We first examine the Commissioner's point that the stock was acquired as a stock dividend, as contrasted with the taxpayer's position that he in fact received a cash dividend with which he in turn purchased the stock.

The taxpayer relies upon the line of cases to the effect that income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income whether he sees fit to enjoy it or not. See Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916. The argument is that since the taxpayer had a "real option" to take cash or stock, then he in fact received a cash dividend.

It will be noted from the quotation from the opinion of the Board of Tax Appeals above, the Board recognized the rule relied upon by the taxpayer, but reasoned that since the election by the taxpayer had to be made some ten days before the date when the dividend was payable, the result was that on the payment date there was no longer any true option.

■■ We do not agree with this reasoning of the Board. It overlooks the general rule of law that the owner of stock at the date of the declaration of a dividend secures a vested, property right, and that a provision for payment to stockholders of record of a certain future date is for a mere convenience and for the sole benefit of the corporation. See Helvering v. Mc-Glue's Estate, 4 Cir., April 10, 1941, 119 F.2d 167. As of the date of the declaration of the dividend in the instant case [July 19, 1930] the taxpayer's right to the dividend had accrued. At that moment he had a "real option" to take either cash or stock. We see no escape from the conclusion that he received a cash dividend, with an option to turn the cash into the corporation for stock.

Nor do we see any merit in the argument that the fact that the election to take stock was to be made by non-action instead of by positive act changes the result. To us it seems immaterial whether the option is to be exercised by non-action or by positive action. See Corliss v. Bowers, supra.

Since the taxpayer received in 1930 a true cash dividend and applied the proceeds of that dividend to the purchase of the stock involved in this appeal, it follows that the cost basis of that stock on subsequent sale is at least its purchase price.

The Commissioner urges, however, that even though this Court should find the dividend received by the taxpayer to have

been a cash dividend, still it should hold that the 1939 Act quoted above is applicable. The argument is that the said Act carefully avoids reference to "stock dividends" and instead refers to "property acquired by a shareholder in a corporation which consists of stock in such corporation".

This is true, but the Act goes on to specify that such "property" must have been acquired by the taxpayer "in a distribution by such corporation". Our holding above that the stock involved in this appeal was not acquired by the taxpayer "in a distribution", but was purchased by the taxpayer with the proceeds of his cash dividend, necessarily makes the quoted Act inapplicable.

We have heretofore referred to the claim by the taxpayer that certain contributions by him to the capital of the corporation involved, increased the cost to him of the stock in question.

The record before us is insufficient for us to make any determination of the question whether or not these contributions may be taken into consideration in determining the taxpayer's basis for determining gain or loss on the subsequent sale of the stock.

The decision is reversed and the case is remanded to the Board with instructions to re-determine taxpayer's tax liability on a basis not inconsistent with the view that the dividend received by the taxpayer in 1930 was a cash dividend, and that the original cost of the 1051 shares of preferred stock acquired by the taxpayer and his wife was $105,100.00.