*Decision will be entered under Rule 50.*

THE UNITED GAS IMPROVEMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106504. Promulgated September 22, 1942.

*John H. Minds, Esq.*, for the petitioner.

*Brooks Fullerton, Esq.*, and *Harry L. Brown, Esq.*, for the respondent.

718

722

OPINION.

Smith: The petitioner alleges in its petition to this Board that in the determination of the deficiency for 1937 the respondent made the following errors:

(a) The Commissioner of Internal Revenue, * * * erroneously disallowed deductions of a loss in the amount of $2,473,062.52, which loss petitioner sustained in the year 1937 through bankruptcy of Nashville Gas and Heating Company, a Tennessee corporation, to which corporation petitioner had loaned large sums of money and in the preferred and common stocks of which corporation petitioner had invested large sums of money.

(b) The said Nashville Gas and Heating Company was also indebted to petitioner on two other items—one for an account receivable in the amount of $200.22, and the other for accrued interest in the amount of $333.34—both of which sums of money petitioner lost through the same bankruptcy proceedings and both of which the Commissioner of Internal Revenue erroneously disallowed as a deduction when computing petitioner's net income for the year 1937.

The alleged loss of $2,473,062.52 is composed of the following items:

| | |
|---|---:|
| Investment in the preferred stock | $726,360.67 |
| Investment in the common stock | 188,140.35 |
| Loans to company from 10/9/21 to 1/1/22, the aggregate of which was charged off on the petitioner's books of account in 1922 but not claimed as a deduction from gross income of that year | 1,036,336.50 |
| Loans to company which had not been charged off at date of bankruptcy proceedings | 522,225.00 |
| | 2,473,062.52 |

The account receivable of the Nashville Gas & Heating Co. of $200.22 and, the item of accrued interest of $333.34 were not affected by the plan of reorganization. That plan specifically provided that the liabilities of Nashville Gas & Heating Co., other than those spe-

cifically mentioned in the plan of reorganization, were not to be affected. The petitioner has offered no evidence in support of its claim for the deduction of these two items and it will be considered that the petitioner has waived its claim thereto.

The respondent's position is that the petitioner sustained no recognizable loss on the transactions in question, since it turned in to the corporation its obligations to petitioner, and other property, and received in exchange therefor all of the capital stock and some bonds of the reorganized corporation. Respondent further contends in the alternative that the stock and securities, as well as the indebtedness of the Nashville Gas & Heating Co., became worthless, if at all, prior to the taxable year 1937. In his answer in which he makes such alternative contention the respondent alleges that upon payment of the guaranteed bonds of the Nashville Gas & Heating Co. petitioner became subrogated to the rights of the bondholders and that in effect petitioner surrendered such bonds, together with those which it already owned, for the common stock of the reorganized corporation of a greater value, thereby realizing a taxable gain of over $1,300,000.

The material provisions of the statute (Revenue Act of 1936) read as follows:

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

(1) The term "reorganization" means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock; of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected.

It should be observed that we are not dealing here with a merger or consolidation of corporations. The Nashville Gas & Heating Co. had the same assets after the reorganization as it had before. Its liabili-

ties were reduced. It was the same corporate entity as before. Even if none of the other requirements of a reorganization as defined in section 112 (g) was met, there was certainly a "recapitalization" of the Nashville Gas & Heating Co. under section 112 (g) (1) (D). See *Benjamin W. Fredericks*, 21 B. T. A. 433; affd., *Kistler* v. *Burnet*, 58 Fed. (2d) 687; *Walter F. Haas*, 29 B. T. A. 900; affirmed without opinion (C. C. A., 6th Cir.), Jan. 14, 1936; *Hoagland Corporation*, 42 B. T. A. 13; affd., 121 Fed. (2d) 962; *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179; *Edith M. Greenwood*, 41 B. T. A. 664; *Daniel MacDougald*, 44 B. T. A. 1046.

At the beginning of the reorganization proceedings under section 77B of the Bankruptcy Act petitioner owned practically all of the Nashville Gas & Heating Co.'s common stock (15,834.4 shares out of 16,000), all of its outstanding preferred shares, $37,000 of its guaranteed bonds, and $40,000 of its unguaranteed bonds. At the conclusion of the reorganization proceedings, and upon consummation of the plan of reorganization, petitioner owned all of the corporation's common stock (it had no issued preferred stock) and $40,000 of its new bonds. Petitioner argues, however, that under the reorganization plan there was no exchange of the old shares for the new shares within the meaning of section 112 (b) (3), but that the new shares were issued to it solely in consideration for the cash payment of $1,968,207.86 which petitioner furnished to pay off the guaranteed bonds.

While the reorganization plan expressly provided that the holders of the old stock, both common and preferred, would turn those shares in to the trustee for cancellation and would receive nothing in exchange for them, we do not think that this determines what was actually done in the reorganization, or the tax consequences thereof.

In the first place, it is obvious that the petitioner was the principal party interested in the reorganization of the Nashville Gas & Heating Co., since it owned practically all of its capital stock, was the guarantor of most of its outstanding bonds, and was its principal creditor. It was of no consequence to the other bondholders or to anyone else, unless to the minority common stockholders, whether the reorganization plan provided that the new shares should be issued to the petitioner in exchange for the old shares and the indebtedness or in consideration for petitioner's payment of the guaranteed bonds. Petitioner was obligated by contract to pay off the bonds in any event. We do not know who the minority common stockholders were. They held only 1.03 percent (165.6 shares out of 16,000 shares) of the common stock. They made no objection to the plan of reorganization. The plan which was approved by the court provided that the rights and interests of all common stockholders would be terminated by the execution of the

plan. The Nashville Gas & Heating Co. was not adjudged and never claimed to be insolvent. The proceedings for reorganization under section 77B were based upon the company's inability to meet the obligations on its bonds and other fixed payments as they became due. The petitioner points out in its brief in this proceeding that the corporate balance sheets for 1935 and 1936 show only a slight impairment of capital and a "very substantial equity, sufficient in amount to return to petitioner the major portion of its investment in the preferred and common stocks of Nashville Gas & Heating Company."

In view of these circumstances we can not escape the conviction that the real consideration which petitioner gave for the new stock was the old stock and bonds and the indebtedness.

It has been held repeatedly that all of the different steps taken under a reorganization plan must be regarded as component parts of the plan and can not be treated as isolated transactions in determining the tax consequences. *Prairie Oil & Gas Co.* v. *Motter*, 66 Fed. (2d) 309; *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77; *Ahles Realty Corporation* v. *Commissioner*, 71 Fed. (2d) 150; *Sam Pickard*, 40 B. T. A. 258; affd., 113 Fed. (2d) 488; *Morgan Manufacturing Co.*, 44 B. T. A. 691.

In *Hoagland Corporation, supra*, there was a reorganization under section 77B of the Bankruptcy Act which the taxpayer conceded, and which we held, to be a reorganization under section 112 (g) (1) (D). Pursuant to the reorganization plan, there was a replacement of old stock and bonds with new stock. The taxpayer surrendered his old shares and a large indebtedness owed to it by the reorganized corporation for cancellation and in exchange received new class B shares. We held that the taxpayer did not sustain any recognizable loss on the transaction, and the Circuit Court of Appeals for the Second Circuit affirmed. In the instant case the petitioner surrendered for cancellation shares of the old stock, bonds, and the debt of the old corporation and received all of the newly issued common stock and some of the new bonds.

The facts in the instant case would not be distinguishable from those in the *Hoagland Corporation* case except for the express provision in the reorganization plan here that the old shares and the indebtedness owing to petitioner would be canceled and nothing would be given in exchange for them. As stated above, we do not think that the wording of the reorganization plan determines what consideration was actually paid for the new shares. The plan does not state specifically that petitioner's payment of the guaranteed bonds would constitute the entire consideration for the new common stock. It says merely that:

If, on the consummation of the Plan, the Guarantor of the payment of principal and interest of the said guaranteed bonds (Nos. 1 to 2000, inclusive) shall pay to

the Girard Trust Company, as trustee, cash in an amount sufficient to make the payments to the guaranteed bondholders as stated in (a) above, to be used for such purpose, the Guarantor shall receive all of the capital stock of the Company, namely, 20,000 shares of $100 par value each.

Petitioner was already legally bound to pay both principal and interest on the bonds, the due date of which was May 1, 1937. The cash for that purpose was deposited with the trustee on April 23, 1937.

Regardless of the wording of the plan, we think that in effect petitioner exchanged its old common and preferred stock and most of its claims against that company for the new common stock. See *W. C. Coleman*, 31 B. T. A. 319; affd., 81 Fed. (2d) 455.

As to the old common and preferred stock, there was clearly an exchange of "stock or securities  *  *  *  solely for stock or securities" within the meaning of section 112 (b) (3) and no gain or loss is recognizable on the transaction.

The fact that the cash or other property than "stock or securities" is given in exchange "solely for stock or securities" does not prevent the application of section 112 (b) (3). *W. H. Hartman Co.*, 20 B. T. A. 302; *First National Bank of Champlain, N. Y.*, 21 B. T. A. 415; *George E. Hamilton*, 30 B. T. A. 160; *Securities Co.* v. *Commissioner*, 64 Fed. (2d) 330. While the indebtedness for moneys advanced to the reorganized corporation was not "securities" (or stock), it was nevertheless, we think, an additional consideration for the new stock and for that reason may not be treated as a bad debt of the taxable year.

As an additional reason for disallowing the deductions claimed by the petitioner, we think the evidence fails to establish that the securities of the Nashville Gas & Heating Co., or its indebtedness to the petitioner at the time of the reorganization, became worthless during the taxable year 1937. The book value of the common stock, as shown by the company's balance sheet at December 31, 1937, was $3,310,278.25, which figure is arrived at by adding to the par value of the stock ($2,000,000) the capital surplus ($1,417,371.56) and by deducting from the total the deficit in earned surplus of $107,093.31. There is nothing in the evidence to indicate that the petitioner would have been willing to part with the securities or relinquish the debt as proposed in the plan of reorganization without receiving the entire new issue of capital stock. The plan contemplated a cutting down of the liabilities of the company, the cancellation of the preferred and common shares outstanding, and the substitution therefor of 20,000 shares of common stock. Consideration must be given to the entire plan of reorganization. When so given, it must be held that the common stock was issued in consideration of all that was done by the petitioner. See *W. C. Coleman, supra*.

The respondent's claim for an increased deficiency for the taxable year was an alternative contention. Since we have sustained the respondent's contentions upon which the deficiency was determined, it is not necessary to consider the alternative contention.

Reviewed by the Board.

*Decision will be entered for the respondent.*

MURDOCK, LEECH, and KERN dissent.