J. ROBERT FISHER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4885–71.    Filed April 22, 1974.

*James B. Lewis* and *Mark M. Weinstein,* for the petitioner.
*Stanley J. Goldberg* and *Warren W. Dill,* for the respondent.

SIMPSON, *Judge:* The respondent determined deficiencies of $70,896 in the Federal income tax of the petitioner for each of the years 1966 and 1967. The parties are now in agreement that if we find a deficiency, such deficiency is in the tax for the year 1967. The sole issue for decision is whether the petitioner received 170,414 shares of stock as part of a transaction which qualified as a reorganization under section 368(a)(1)(B) of the Internal Revenue Code of 1954,[1] or whether in

---

[1] All statutory references are to the Internal Revenue Code of 1954 as applicable during the years in issue, unless otherwise indicated.

substance, he received 168,800 shares of stock as part of such reorganization and simultaneously received 1,614 additional shares taxable as a dividend under section 301.

Some of the facts have been stipulated, and those facts are so found.

The petitioner, J. Robert Fisher, maintained his legal residence in New York, N.Y., at the time his petition was filed in this case. He filed his individual Federal income tax returns for the years 1966 and 1967 with the district director of internal revenue, Manhattan District, New York.

In 1966, the petitioner owned 100 shares of common stock in Fisher Chemical Co., Inc. (Chemical), a corporation organized under the laws of the State of New York. Such 100 shares constituted all of the issued and outstanding shares of stock of Chemical.

On Friday, November 18, 1966, the petitioner and Ashland Oil & Refining Co., Inc. (Ashland), a corporation organized under the laws of the State of Kentucky, which has since changed its name to Ashland Oil, Inc., entered into a written agreement, entitled "Agreement and Plan of Reorganization." Ashland agreed to acquire from the petitioner all of the outstanding stock in Chemical in exchange for 168,800 shares of Ashland voting cumulative preferred stock, $2.40 convertible series of 1966 (Ashland stock).

The Ashland stock to be given the petitioner was designed by Ashland to be an attractive security for use in business acquisitions. Each holder of Ashland stock was entitled to an annual preferred dividend of $2.40, payable quarterly on the 15th day of March, June, September, and December. Although the articles of incorporation provided that such dividends were to be cumulative from the date or dates of issue, Ashland had been informed by the New York Stock Exchange (NYSE)—the only exchange on which the stock was traded—that its rules would not permit the listing of additional shares of Ashland stock unless the first dividend on such shares covered the first full quarterly period for which the record date had not expired. All listed shares thus bore the same dividend.

In order to qualify the shares of Ashland stock for listing, a letter agreement was executed simultaneously with the agreement and plan of reorganization. Such letter agreement expressed the understanding of the parties that notwithstanding the fact that the certificates for the shares of Ashland stock were to be delivered on, and dated, the closing date, no dividends were to accrue for any period expiring on or prior to December 15, 1966. Dividends were to fully accrue and be payable after December 15, 1966.

The agreement and plan of reorganization provided that the closing of the transaction would not take place until the petitioner received a ruling from the Internal Revenue Service, in form satisfactory to his counsel, that the transaction qualified as a tax-free reorganization under section 368(a)(1)(B) and that the Ashland stock did not constitute "Section 306 stock," within the meaning of section 306(c). In addition, the agreement provided that the transaction could not be closed earlier than 30 days following notice to the Department of Justice of the acquisition, unless the Department of Justice should have previously approved the transaction in response to such notice.

The parties to the agreement initially intended December 15, 1966, as the closing date for the transaction, and the petitioner urged his counsel to make every effort to expedite the closing. On Monday, November 21, 1966, the first business day following the signing of the agreement, counsel for the petitioner filed an application for a tax ruling with the IRS. In such request, counsel clearly stated that Ashland proposed to acquire from the petitioner all of his outstanding stock in Chemical, in exchange for 168,800 shares of Ashland stock. Expeditious action was requested, and counsel asked that he be notified by telephone, so that the ruling could be picked up by hand. However, he had no real hope that the ruling could be secured in time for closing on the target date and informed the petitioner that it was generally 2 or 3 months before a ruling concerning reorganizations was handed down by the IRS. In the interests of simplifying and expediting consideration of the ruling application, counsel for the petitioner, on Wednesday, November 23, 1966, withdrew that part of the ruling application relating to the classification of the Ashland stock as "section 306 stock."

To secure the antitrust clearance, the petitioner's Washington counsel filed a request with the Department of Justice on November 21, 1966.

The provision in the letter agreement that dividends on the petitioner's shares of Ashland stock would cumulate from December 15, 1966, first came to the attention of the petitioner's principal tax counsel on November 28, 1966, when a draft of an application to the NYSE for the listing of the petitioner's stock was reviewed. Counsel considered it unlikely that the necessary rulings would be received in time for the closing to take place on December 15, 1966, and he feared that in the event the petitioner received a cash dividend in addition to the 168,800 shares of Ashland stock, the IRS might take the position that the exchange did not qualify as a "B reorganization." Initially, he considered filing a request for an amended ruling; but he rejected such course because it might delay or jeopardize the rul-

ing. Thereupon, he communicated his concern to the petitioner and counsel for Ashland, and insisted that the contractual provisions relating to the accrual of dividends be modified.

By letter agreement, dated Friday, December 9, 1966, the petitioner and Ashland amended their agreement, in part, by eliminating the requirement as to a ruling relating to the classification of the Ashland stock as section 306 stock. Such amendment also provided:

This will also confirm our agreement that if the closing under the Agreement and Plan of Reorganization does not occur on or before December 15, 1966, no dividends shall accrue or be payable on or with respect to any shares of * * * [Ashland stock] to be delivered to you for any period prior to March 16, 1967. In lieu of the cumulative dividend from December 15, 1966, to which such shares would have been entitled if the dividend thereon were to accrue from that date, Ashland will deliver 1,614 additional shares of * * * [Ashland stock] to you at the closing. In the event that the closing does not occur on or before December 15, 1966, it is also agreed that the aggregate shares to be delivered to you at the closing will be held in escrow by an agent of your selection and approved by us until after the Record Date for the quarterly dividend payable on March 15, 1967.

The number of additional shares of Ashland stock to be transferred to the petitioner was determined by dividing the 60-cent quarterly dividend on 168,800 shares of Ashland stock by $62.75, the mean between the high and low quoted prices of Ashland stock on the NYSE on November 18, 1966.

On December 12, 1966, the Department of Justice notified counsel for the petitioner by telephone of its approval, and an antitrust clearance letter was picked up by hand on that same day. On December 13, 1966, the final application for listing was filed with the NYSE. The application listed 170,414 shares of Ashland stock to be used in acquiring the petitioner's stock in Chemical. In part, such listing stated:

Pursuant to the terms of an Agreement and Plan of Reorganization dated November 18, 1966, between Ashland and J. Robert Fisher, Ashland will acquire all the outstanding stock of Fisher Chemical Company, Inc., a New York corporation ("Chemical"), in consideration for 168,800 shares of Ashland Preferred Stock. * * * By separate letter agreement dated December 9, 1966, Ashland and Mr. Fisher have agreed that if the closing occurs after December 15, 1966, no cumulative dividend will be paid in respect of the 168,800 shares to be delivered to Mr. Fisher for any period prior to March 15, 1967, and in lieu thereof an additional 1,614 shares of Ashland Preferred Stock will be issued to Mr. Fisher. * * *

Meanwhile, on December 12, 1966, the IRS issued and mailed a favorable ruling to petitioner's counsel. However, counsel did not learn of such ruling until it was received in the mail on December 14, 1966. Because of the volume of last-minute preparations, the transaction could not be closed until December 16, 1966. At that time, Ashland delivered a certificate in the petitioner's name evidencing 170,414

shares of preferred stock. That certificate was placed in escrow, as provided by the December 9, 1966, letter agreement, until after the record date of the dividend for the quarter beginning December 16, 1966, to eliminate any risk of transfer of any of the shares to a third party who might request payment of that dividend.

The escrow agent released the stock certificate to the petitioner on February 14, 1967, the day after the dividend record date. No cash dividend for the quarter beginning December 16, 1966, was paid on the petitioner's shares.

In his income tax return for the year 1966, the petitioner reported the exchange of 100 shares of stock in Chemical for 168,800 shares of Ashland stock. He did not report the receipt of the 1,614 additional shares in the return for that year or for 1967.

On November 21, 1967, the petitioner sold 11,000 shares of Ashland stock, and on December 7, 1967, he sold an additional 17,000 shares of such stock. In his return for the year 1967, the petitioner reported a gross sales price from such sales in the amount of $1,902,663.14, and a combined tax basis and sales expense of $10,774.40.

The respondent determined that the 1,614 additional shares were received in lieu of the 60-cent cash dividend for the quarter beginning December 16, 1966, and therefore constituted a taxable dividend. To protect his litigating position, the respondent determined deficiencies in the petitioner's income tax for the years 1966 and 1967 based on the inclusion of the alleged dividend in each of such years. The parties now agree that if the additional shares constituted a taxable dividend, they are taxable in 1967 and not 1966.

OPINION

Section 368(a)(1)(B) provides that the term "reorganization" means:

the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of stock of another corporation if, immediately after the acquisition, the acquiring corporation has control of such other corporation * * *

Section 354 provides, in pertinent part:

(a) GENERAL RULE.—
(1) IN GENERAL.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

Section 305(a) provides that, as a general rule, "gross income does not include the amount of any distribution of the stock of a corporation made by such corporation to its shareholders with respect to its stock," but section 305(b) sets forth certain exceptions to that general

rule. As applicable during the years in issue, section 305(b)(2) provided that a distribution in lieu of money is to be treated as a distribution of property to which section 301 applies if, at the election of any of its shareholders, it is payable either in the stock of the corporation or in property.

The petitioner relies on section 354(a)(1) and contends that there was a valid B reorganization, and that pursuant to the plan of reorganization, he transferred 100 shares of common stock in Chemical and received 170,414 shares of Ashland stock. The respondent concedes that there was a B reorganization. However, he contends that in substance there were two transactions. In the first, the petitioner received 168,800 shares of Ashland stock in exchange for 100 shares of common stock in Chemical. In the second transaction, the petitioner received 1,614 shares of Ashland stock in lieu of the dividend for the quarter beginning December 16, 1966. He contends that such additional shares are taxable under section 301.

The issue has been narrowly drawn, and the basic facts are not in dispute. There is no issue with respect to whether there was a valid B reorganization, nor is there an issue with respect to whether Ashland and Chemical were parties to such reorganization. Rather, the issue to be decided involves the proper characterization of the facts in the record. Was the receipt of the additional shares in substance part of the consideration for the B reorganization or was such receipt attributable to rights held by the petitioner which were separate and apart from the B reorganization?

We have considered the evidence in the record and the arguments set forth by both parties. Such consideration leads us to believe that two significantly different transactions took place. On November 18, the petitioner agreed to exchange all of his Chemical stock for 168,800 shares of Ashland stock, and the subsequent circumstances reveal clearly that the petitioner understood that he was receiving only 168,800 shares of the Ashland stock for his Chemical stock. On his return for 1966, he reported that he received that number of shares for his stock, and in the listing with the NYSE, the exchange was described in a similar manner. Had the closing occurred on or before December 15, 1966—as hoped by the petitioner, he would have received only the 168,800 shares of Ashland stock and in due course would have received a cash dividend of $101,280 for the quarter beginning December 16, 1966. Under those circumstances, it would have been clear that the receipt of the dividend was a separate transaction.

The December 9 modification of the original agreement actually furnishes additional evidence that only 168,800 shares of Ashland stock was to be exchanged for the petitioner's Chemical stock. That modi-

fication shows clearly that the petitioner was agreeing to waive the cash dividend that he otherwise would receive in exchange for receiving the additional 1,614 shares of Ashland stock. We accept the petitioner's statement that this modification was not made for the purpose of tax avoidance but was made to avoid any questions concerning the tax-free character of the reorganization; even so, it still remains clear that he exchanged a future right to a cash dividend for a right to receive additional shares of Ashland stock. Although the petitioner received the entire 170,414 shares of Ashland stock at the same time, that fact does not obscure the fact that part of such stock was transferred to him in exchange for his Chemical stock and part of it was in exchange for his anticipated cash dividend. If the petitioner had exchanged his right to receive cash dividends in 1967 for additional shares of Ashland stock, it would be clear that the additional shares constituted a dividend. There is no significant difference between that situation and what actually happened in this case.

By the December 9 amendment, the petitioner succeeded in avoiding any questions as to the tax-free character of the reorganization. He now wants us to hold that because the reorganization was tax free, no part of the stock should be taxed as a dividend. Sections 368(a)(1)(B) and 354(a)(1) reflect a longstanding rule of tax law that a tax should not be imposed when the voting stock of one corporation is exchanged solely for the voting stock of another corporation pursuant to a plan of reorganization. Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 14.01, p. 14–3 (3d ed.). In such a situation, the stockholder of one corporation, who is thereby the indirect owner of the assets of that corporation, has merely exchanged his interest for an interest in another corporation which then owns those assets, and the investment of the taxpayer remains in corporate solution. That rule was applicable when the petitioner agreed to exchange his Chemical stock for 168,800 shares of Ashland stock; he thereby exchanged his ownership in Chemical for a portion of the ownership of Ashland. However, when on December 9, he exchanged his right to a future cash dividend for additional Ashland stock, that exchange was not the type to which the rule of section 354(a)(1) is applicable; he did not exchange stock of one corporation for the additional shares of Ashland stock. Merely because the petitioner received both blocks of Ashland stock at the same time is no reason in law to sweep all the stock within the umbrella of section 354(a)(1). In *Arthur D. McDonald*, 52 T.C. 82 (1969), the Borden Co. offered to exchange some of its stock for Mr. McDonald's stock in a corporation controlled by him, but Borden insisted that prior to such exchange, the corporation should redeem preferred stock also held by Mr. Mc-

Donald. There the respondent conceded that the redemption was a separate transaction, just as he does in this case, which did not affect the B reorganization. The respondent has also ruled that distributions of certain cash dividends and other property made contemporaneously with a B reorganization were separate from and did not affect the B reorganization. See Rev. Rul. 68–435, 1968–2 C.B. 155; Rev. Rul. 69–443, 1969–2 C.B. 54; Rev. Rul. 70–172, 1970–1 C.B. 77; compare *Turnbow* v. *Commissioner*, 368 U.S. 337 (1961). Since the additional Ashland stock was received in a separate transaction and was not received in exchange for the Chemical stock, our holding in *American Manufacturing Co.*, 55 T.C. 204 (1970), has no applicability to this case. See *James Armour, Inc.*, 43 T.C. 295, 309–310 (1964); compare *Davant* v. *Commissioner*, 366 F. 2d 874 (C.A. 5, 1966), affirming in part and reversing in part *South Texas Rice Warehouse Co.*, 43 T.C. 540 (1965), certiorari denied 386 U.S. 1022 (1967).

The petitioner vehemently argues that section 305(b)(2) is not applicable because he was not a shareholder at the time of the agreement on December 9 and that he never made an election as a shareholder to receive stock in lieu of a cash dividend. We disagree.

The petitioner cannot claim the benefit of the exclusion of section 305(a) without also being subject to the limitation of section 305(b)(2). If he is treated as a shareholder of Ashland for tax purposes, the distribution of the additional 1,614 shares of Ashland stock comes within the general rule of section 305(a), excluding stock dividends from gross income; but clearly, such distribution also comes within the exception of section 305(b)(2), providing that such distribution is taxable as a dividend under section 301. Section 305(a) specifically provided that the general rule would apply "Except as provided in subsection (b)." That provision echoes the report of the Senate Finance Committee (S. Rept. No. 1622, 83d Cong., 2d Sess., p. 44 (1954)), and it seems clear that Congress meant for that limitation to apply to anyone who claimed that a stock dividend was excludable under section 305(a). Moreover, for the dividend period beginning on December 16, the petitioner received Ashland stock, while other Ashland shareholders received cash, and it was as a result of his action—the amendment of December 9—that the petitioner received stock. It is of no consequence that he ultimately received stock, rather than cash, with no additional action on his part. *Lamberth* v. *Commissioner*, 120 F. 2d 101, 105 (C.A. 9, 1941), reversing 42 B.T.A. 438 (1940). There is no difference in substance between a taxpayer who has the right to elect the form of a dividend before he becomes a shareholder, and a taxpayer who has the right while a shareholder. In both instances, the taxpayer is in fact a shareholder at the time

of the stock distribution, and in both instances, he has been afforded the opportunity to receive either stock or other property.

By transforming a right to a cash dividend into the receipt of additional shares of stock, the petitioner seeks to transform that which otherwise would have been ordinary income into part of a tax-free transaction. Section 305(b) was intended to prevent that type of transformation; as such, it represents a policy that appears throughout the tax law. In *Helvering* v. *Horst*, 311 U.S. 112 (1940), the taxpayer transferred to his son a negotiable interest coupon attached to a negotiable bond shortly before its due date; the Court found that despite the transfer, the taxpayer realized the fruits of his investment and was taxable on them. In *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260 (1958), the taxpayers, in part, transferred oil or gas rights for lump-sum payments and reported the gain realized as long-term capital gains. The Court found that regardless of the form of the transactions, no part of the consideration which passed hands was attributable to an increase in the value of the income-producing property. Rather, each transaction was in substance a transfer of a right to receive future income, and as such, gave rise to ordinary income. See also *Jaglom* v. *Commissioner*, 303 F. 2d 847 (C.A. 2, 1962), affirming 36 T.C. 126 (1961) ("flat" sale of defaulted bonds); *Brundage* v. *United States*, 275 F. 2d 424 (C.A. 7, 1960), certiorari denied 364 U.S. 831 (1960) (sale of stock convertible into other stock that had accumulated dividends); *Estate of Gertrude H. Crocker*, 37 T.C. 605, 612–613 (1962) (sale of insurance policy on which there were "dividends" comprised of investment profits).

In the case now before us, the petitioner originally had a right to receive a cash dividend for the dividend period beginning on December 16, if the stock exchange ultimately took place. By the agreement dated December 9, 1966, he exchanged that right for a right to receive additional shares of Ashland stock. Thus, he had a right, albeit contingent, to receive an amount that would have been taxable as ordinary income under section 301, and his agreement to receive that amount in a different form does not affect its taxability. Sec. 305(b) ; see *Commissioner* v. *P. G. Lake, Inc., supra; Helvering* v. *Horst, supra;* see also *Corn Products Co.* v. *Commissioner*, 350 U.S. 46 (1955) ; *Burnet* v. *Harmel*, 287 U.S. 103 (1932). Merely because the right to the dividend was contingent does not remove the dividend from the purview of section 305(b), nor is it a basis for distinguishing the above-cited cases. See, e.g., *Helvering* v. *Eubank*, 311 U.S. 122 (1940). Thus, the additional shares of Ashland stock constituted a dividend under section 301.

In the past, this and other courts have held that when a stockholder exchanged his preferred stock with respect to which dividends were

in arrears for new stock pursuant to a tax-free recapitalization, no part of the distribution of the new stock should be treated as a dividend. *Okonite Co.*, 4 T.C. 618 (1945), affd. 155 F. 2d 248 (C.A. 3, 1946), certiorari denied 329 U.S. 764 (1946), rehearing denied 329 U.S. 829 (1946) and 331 U.S. 870 (1947); *Knapp Monarch Co.*, 1 T.C. 59 (1942), affd. 139 F. 2d 863 (C.A. 8, 1944); *Skenandoa Rayon Corporation*, 42 B.T.A. 1287 (1940), affd. 122 F. 2d 268 (C.A. 2, 1941), certiorari denied 314 U.S. 696 (1941); *South Atlantic Steamship Line*, 42 B.T.A. 705 (1940). However, such cases involved significantly different transactions and are distinguishable from the case now before us. The decision of the Court in each case was clearly based on the finding that the new stock had been intended, from the beginning, to be part of the recapitalization. In *Knapp Monarch*, the Court stated at page 67:

There was no proposal, and apparently no thought or intention, that the holders of such preferred stock would or should surrender such shares solely for the new $2.50 preferred stock, and certainly there is no indication that the holders of the old preferred stock would have agreed to such a proposal or would have made such an exchange if it had been proposed. * * *

See also *Okonite Co.*, *supra* at 632–633; *Skenandoa Rayon Corporation*, *supra* at 1297, 1301–1302; *South Atlantic Steamship Line*, *supra* at 709. Moreover, such cases involved recapitalizations, in which there is merely a reshuffling of the capital structure within the framework of an existing corporation. *Helvering* v. *Southwest Corp.*, 315 U.S. 194 (1942); *United Gas Improvement Co.* v. *Commissioner*, 142 F. 2d 216 (C.A. 3, 1944); affirming 47 B.T.A. 715 (1942), certiorari denied 323 U.S. 739 (1944). After the reshuffling, the stockholders may have received new securities but may not have changed their original investments. *Commissioner* v. *Neustadt's Trust*, 131 F. 2d 528, 530 (C.A. 2, 1942), affirming 43 B.T.A. 848 (1941); see also *United Gas Improvements Co.* v. *Commissioner*, *supra*.

In contrast, it is clear that in accordance with the plan of reorganization, the petitioner was not intended to receive the additional 1,614 shares of Ashland stock; he acquired those additional shares in exchange for surrendering his right to the cash dividend. It is also clear that by acquiring those additional shares, he was not merely reshuffling his interest in the corporation, rather, his interest was thereby significantly augmented. In addition, the holding in the cases, such as *Okonite* and *Knapp Monarch*, was limited by the enactment of section 305(b)(1), which during the years in issue, provided that a distribution of stock was taxable under section 301 to the extent that it was made in discharge of preference dividends for the taxable year of the corporation in which the distribution is made or for the preceding taxable year.

When there has been a redemption of stock with respect to which dividends have been declared but not paid, or with respect to which there was a legally enforceable obligation to pay dividends, a portion of the proceeds of the redemption has been allocated to the dividend and taxable as such. *Arie S. Crown*, 58 T.C. 825 (1972), affirmed per curiam 487 F. 2d 1404 (C.A. 7, 1973). If dividends had accrued but were not declared prior to the redemption, no part of the proceeds was treated as a dividend. *Estate of Oscar L. Mathis*, 47 T.C. 248 (1966) ; *Cummins Diesel Sales Corp.* v. *United States*, 323 F. Supp. 1114 (S.D. Ind. 1971), affirmed per curiam 459 F. 2d 668 (C.A. 7, 1972) ; see also *South Atlantic Steamship Line, supra.* However, the right to accrued but undeclared dividends in many of the cases may have been illusory and was, in any event, quite different than the right possessed by the petitioner. Although his right was subject to the condition that favorable rulings had to be secured from the Internal Revenue Service and the Justice Department, there is no evidence of real concern over the occurrence of such condition, and if that condition occurred, he then had a valuable right either to receive cash or to receive additional Ashland stock equal in value to such cash. Moreover by the time the petitioner received the stock, dividends had actually been declared. Thus, there is nothing in the redemption cases inconsistent with our conclusion that the additional Ashland stock was a dividend.

The petitioner relies on Rev. Rul. 65–256, 1965–2 C.B. 85, and Rev. Proc. 67–14, 1967–1 C.B. 591, in which the respondent recognized that in some circumstances, a shareholder is not taxable when he waives his right to future dividends. The petitioner asserts that in any business transaction in which the shareholder makes such a waiver, he is receiving something in consideration for that concession. However, in the situations referred to in Rev. Rul. 65–256 and Rev. Proc. 67–14, the shareholder received no express consideration for his waiver, and it is not clear what indirect benefit he may have received. In the case before us, on the contrary, it is clear that the petitioner waived his right to a cash dividend in exchange for additional stock; he exchanged a right to receive an amount that would be taxable as ordinary income for valuable property.

Finally, the petitioner argues that if the original agreement and plan of reorganization had provided for him to exchange his Chemical stock for 170,414 shares of Ashland stock, with the closing to take place on December 16, and with the petitioner to receive no dividends on the Ashland stock until after March 15, 1967, the respondent would not have argued that some of the Ashland stock constituted a taxable dividend. However, each case must be decided on the basis of what was actually done, not what might have been done. *Paula Construction*

*Co.*, 58 T.C. 1055, 1060 (1972), affirmed per curiam 474 F. 2d 1345 (C.A. 5, 1973); see also *Weiss* v. *Stearn*, 265 U.S. 242, 254 (1924); *First Nat. Bank of Greeley, Colo.* v. *United States*, 86 F. 2d 938, 941 (C.A. 10, 1936); *Lansing Broadcasting Co.*, 52 T.C. 299, 303 fn. 7 (1969), affd. 427 F. 2d 1014 (C.A. 6, 1970), certiorari denied 400 U.S. 941 (1970). It would be utter folly for us to express any opinion on what would be the position of the respondent or our conclusion in the case supposed by the petitioner, and it would be folly compounded for us to base our conclusion in this case on any such speculation.

For the reasons heretofore set forth, we hold that the 1,614 shares of Ashland stock constituted a dividend taxable under section 301.

*Decision will be entered under Rule 155.*