Albert W. Russel v. Commissioner.
Russel v. Commissioner
Docket No. 2400.
United States Tax Court
1944 Tax Ct. Memo LEXIS 152; 3 T.C.M. (CCH) 817; T.C.M. (RIA) 44266; August 4, 1944
*152 Pursuant to a plan of reorganization under Sec. 77B of the National Bankruptcy Act approved by the court, the petitioner contributed one dollar per share and exchanged preferred stock solely for no par common stock of a new corporation organized to effectuate such plan of reorganization. Held, 1. Under section 112 of the Internal Revenue Code as retroactively amended by section 121 of the Revenue Act of 1943, no gain or loss is recognized on such exchange. 2. Petitioner is entitled to deduct the salary of a part-time secretary under section 23 (a) of the Internal Revenue Code as retroactively amended by section 121 of the Revenue Act of 1942. W. Dean Hopkins, Esq., 1406 Williamson Bldg., Cleveland, O., and Trafton M. Dye, Esq., for the petitioner. W. W. Kerr, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: The petitioner seeks a redetermination of a deficiency in income taxes for the year 1941 in the amount of $4,017.80. The first issue involves the question whether the petitioner realized a capital gain or loss upon the sale of certain shares of stock acquired pursuant to a reorganization under the provisions of section 77B of the National *153 Bankruptcy Act. A second issue is whether compensation paid to a part-time secretary is deductible as an expense. The case was submitted on a stipulation of facts and oral testimony. The facts are found as stipulated. Any additional facts are found from the evidence. Findings of Fact First Issue The petitioner filed his income tax return for the year 1941 with the collector of internal revenue for the eighteenth district of Ohio, at Cleveland, Ohio. On or about August 29, 1929, the petitioner purchased 250 shares of the preferred stock of the Realty Corporation of Cleveland, Ohio (hereinafter called "Old Company") of the par value of $100 each for the sum of $25,000. The Old Company was incorporated in Ohio in the year 1929. It was authorized to issue 20,000 6% preferred shares of the par value of $100 each, and 20,000 no par common shares of a declared value of $5. Each share was entitled to one vote. The Old Company acquired seven income producing properties. All but two were subject to mortgages which aggregated $884,508.34 as of September 30, 1935. By 1935, the Old Company was unable to pay its mortgage debts, taxes and assessments. On November 9, 1935, its board of directors *154 determined to reorganize under section 77B of the National Bankruptcy Act. Accordingly, on December 2, 1935 a petition was filed in the District Court of the United States for the Northern District of Ohio, Eastern Division, under section 77B. On the same date an order was entered approving the petition as properly filed. The matter was referred to a Special Master, but the Old Company was continued in possession of its business. At the time of filing of the petition the Old Company had outstanding 15,614 preferred shares and 15,557 common shares. There were 41 preferred shareholders, all but one of whom owned common shares. The preferred shareholders owned 15,270 of the outstanding common shares. Only three of the common shareholders, whose holdings totaled 287 shares, owned no preferred shares. Six thousand eight hundred and sixty common shares were owned by John D. Fackler, the president of the Old Company. Fackler also owned 24 preferred shares. The preferred and common shareholders were substantially identical. On December 2, 1935, the Old Company filed a proposed plan of reorganization which, inter alia, provided: (a) That the maturities of the mortgages be extended for *155 a period of five years from January 1, 1936, and the interest rate be reduced to 3 per cent per annum; (b) that both preferred and common shares be eliminated and that the reorganized company issue only one class of shares, to wit: 15,614 no par common shares, the exact number of preferred shares then outstanding; that the holders of preferred shares be given the right to subscribe pro rata for the new common shares at $1 per share at any time before noon of December 31, 1935; and that common shares have no rights in the reorganized company; (c) that John D. Fackler, the president of the Old Company, should agree to take any shares in the reorganized company not taken by other preferred shareholders and to pay therefor the sum of $5 per share and that said John D. Fackler should agree to act as president and counsel of the reorganized company for a period of 5 years without compensation; (d) that the plan be carried into execution either by amending the articles of incorporation so as to eliminate the outstanding preferred and common shares and provide for the requisite new shares, or by the organization of a new company authorized to issue the required new shares to be distributed *156 as provided in the Plan. In either event the certificates evidencing the old preferred and common shares should become void and be cancelled. On December 31, 1935, the Special Master entered an order: (a) allowing claims; (b) classifying creditors and shareholders; and (c) finding the Plan had been accepted: (1) by all the creditors affected thereby; (2) by the holders of 14,914 of the preferred shares; and (3) by the holders of all outstanding common shares. By noon, December 31, 1935, the holders of 9,964 preferred shares had elected in writing to take a like number of shares of the no par common stock and to pay $1 per share. The petitioner, prior to noon, December 31, 1935, agreed in writing to take 250 shares of the reorganized company upon the approval of the Plan. On January 4, 1936, the Special Master filed his report with the District Court of the United States and recommended the confirmation of the Plan. On January 25, 1936, after due notice, a hearing was had before the said District Court upon the report of the Special Master. On that date the court entered a decree: (a) approving the proceedings and orders of the Special Master., (b) approving the Plan; (c) directing *157 the Plan be carried into execution; ordering the Old Company to make a written report to the court prior to February 24, 1936 of all acts and things done and performed by it, the reorganization managers and others in carrying the Plan into effect; and continuing the hearing to February 24, 1936 for consideration of said report. The court in the decree of January 25, 1936 ordered, adjudged and decreed in part as follows: "(10) That the Debtor deems it more feasible to organize a new corporation under the laws of Ohio to carry out said Plan, which method of procedure is hereby approved; and that the Debtor and the corporation to be organized under the Plan are and will be authorized by their respective charters and by applicable state and federal laws, upon confirmation of said Plan, to take all action necessary to carry out said Plan; that the Debtor, its officers and directors and the Reorganization Committee specified in said Plan of Reorganization, be, and they are hereby, authorized and directed forthwith to proceed to carry said Plan into execution, and for said purpose to cause to be organized under the laws of the State of Ohio said new corporation having the requisite number *158 of common shares provided for by said Plan, and to use the name of the Debtor (or any variation thereof) for said new corporation; to convey to said new corporation all of the assets of the Debtor, which said new corporation shall assume all of the obligations of the Debtor as modified by said Plan of Reorganization and by this decree, and which corporation shall enter into all the agreements necessary or desirable to carry out the said Plan, and that the Debtor is hereby authorized to take all corporate action necessary in the consummation of said Plan; "(11) That the Debtor shall transfer and convey to the new corporation to be organized in pursuance of the Plan of its property dealt with by the Plan (being all of the property of the Debtor wheresoever situated), by proper deeds and other instruments of conveyance, * * *." Pursuant to said decree of the United States District Court and in accordance with the Plan, the reorganization managers on January 31, 1936 caused articles of incorporation of a new corporation with the name of "Realty Corporation" (hereinafter called "New Company") to be filed with the Secretary of State of Ohio. By those articles of incorporation the New *159 Company was authorized to issue 15,614 no par common shares. On February 1, 1936, a notice was mailed to the persons entitled to, and who had subscribed for, shares in the reorganization company of the first meeting of the shareholders of the New Company to be called on February 11, 1936 for the purpose of adopting a code of regulations, electing directors and the transaction of such other business as might properly come before said meeting. At said stockholders' meeting, the directors of the Old Company, to wit: John D. Fackler, president; Malcolm L. McBride, Secretary; and W. P. Greenwood, Treasurer, were elected to the same offices in the New Company. In addition, C. W. Hitchcock was elected vice president of the New Company. On February 11, 1936, pursuant to the Plan and the decree of the District Court of January 25, 1936, the Old Company conveyed and transferred all of its property to the New Company. The holders of 9,964 preferred shares of the Old Company who under the Plan had elected to take no par common shares of the New Company, including petitioner, paid to the New Company at the rate of $1 for each share which they had elected to take. Petitioner made his payment *160 on or about February 6, 1936. Pursuant to the Plan and his subscription, John D. Fackler received 24 no par common shares of the New Company and paid to the New Company the sum of $24. Pursuant to the Plan and his agreement contained therein, John D. Fackler received 5,650 no par common shares and paid to the New Company the sum of $5 per share, or the aggregate sum of $28,250. In addition, John D. Fackler loaned the New Company the sum of $52,000, evidenced by a promissory note of the New Company dated February 13, 1936, payable on or before 5 years after date thereof with interest at 3 per cent per annum, secured by mortgage. The holders of old preferred shares, including petitioner, who elected to take their allotment of shares in the New Company, surrendered to the Old Company their certificates for the old preferred shares, and certificates for preferred shares so surrendered (including petitioner's) had stamped thereon a notation to the effect that the shares were cancelled pursuant to the Plan of Reorganization and the decree of the United States District Court. Certificates for shares of the New Company were issued under date of February 19, 1936. On February 21, 1936 the *161 Old Company filed with the United States District Court a report of the debtor that the Plan was fully executed and consummated, and prayed for a final decree. On February 24, 1936, the District Court of the United States entered its final decree. Inter alia it decreed: (a) The plan to be finally consummated; (b) that common shareholders and the preferred shareholders of the Old Company who elected not to subscribe to the shares of the New Company had no right, title, claim or interest of any kind of the New Company or in the assets transferred; (c) all shareholders of the Old Company be enjoined from asserting any right against the New Company or the assets transferred except assets assumed by the New Company pursuant to the Plan and to shares in the New Company received in consummation of the Plan; (d) all secured creditors be enjoined from asserting any claims, except as their respective claims had been modified in accordance with the Plan; (e) that the case be closed. No provision of any kind was made either in the Plan or the consummation thereof for common shareholders of the Old Company or for the preferred shareholders of the Old Company who elected not to subscribe *162 for the shares of the New Company. The petitioner in his income tax returns for 1935 and 1936 did not claim any loss by reason of his ownership of the preferred shares of the Old Company which were cancelled and the receipt of a like number of shares of the no par common of the New Company pursuant to the plan of reorganization. The petitioner's income tax for 1936 was finally determined prior to the enactment of the Revenue Act of 1943. The petitioner continuously held the 250 no par common shares of the New Company, received at the time of the consummation of the reorganization, until December 3, 1941, when he sold the same and received therefor the sum of $1,000. Second Issue During the taxable year 1941, the petitioner was retired from active business but was chairman of the board of directors of a corporation in Detroit, Michigan, and attended meetings of the Board about once a month. In addition to his salary of $4,200 from the Detroit Company he had substantial income from investments in 1941. The petitioner bought and sold some stocks in the year 1941. During the year 1941, the petitioner employed a private secretary for the purpose of carrying on his correspondence *163 with the said Detroit company and in connection with his records and accounts. Personal letters were written by the secretary whenever the occasion arose. During this year the secretary was employed approximately three mornings a week. For the services rendered to the petitioner by his secretary for the entire year, he paid the sum of $307.50. The petitioner had no office or place of business and the work was performed by the said secretary at the petitioner's residence. Opinion First Issue - The petitioner claims a loss on the sale in 1941 of 250 shares of preferred stock in the New Company acquired in 1936 under a plan of reorganization submitted under section 77B of the National Bankruptcy Act and approved by the proper District Court of the United States. The petitioner asserts that the shares were issued to him in an exchange for his preferred shares in the Old Company in a nontaxable reorganization, and that his base for taxable gain or loss was therefore his cost of the preferred shares in the Old Company. The respondent contends there was no such reorganization and that the petitioner purchased the shares in 1936 from the New Company for $1 per share, which cost is *164 the basis upon which his gain or loss on the 1941 sale must be computed. Thus the respondent has determined the deficiency by denying the claimed loss and asserting, on the other hand, that a taxable gain was realized upon that sale. As the case was originally presented, petitioner relied particularly upon the definition of reorganization contained in section 112 (g) (1) of the Revenue Act of 1934 or that of 1936, as retroactively amended by section 213 (g) of the Revenue Act of 1939. After the case was heard, however, the Revenue Act of 1943 was enacted on February 25, 1944. By section 121 of that act, sections 112 and 113, I.R.C., were amended retroactively to include "Revenue laws respectively applicable to taxable years beginning after December 31, 1933". As a result of that enactment, petitioner supplemented his position by relying on certain of those amendments which, so far as material, are set out in the footnote. [1]
*165 In response to an order of this Court, both parties have filed supplemental briefs supporting their opposing positions under the quoted amendments in the 1943 act. The ultimate question is, of course, the proper basis to be used in computing the gain or loss on petitioner's sale of the preferred stock in the taxable year. Under section 113 (a), as thus amended, petitioner used the correct basis if the transaction as a result of which he received his shares in the New Company on February 19, 1936 satisfies the provisions of section 112 as so amended. Respondent argues that it does not. As we understand, he bases his position on only two premises. He argues that section 121 (b) (1) does not apply since petitioner did not "exchange" his "stock or securities" in the Old Company "in consideration * * * solely * * * [for] stock or securities" in the New Company. Here not only realism but the statute itself specifically opposes the view that no "exchange" within this section occurred. The section provides its own definition of "exchange". Thus it reads: "* * * an exchange consisting of the relinquishment or extinguishment of stock or securities * * *". The preferred stock of petitioner *166 in the Old Company was certainly relinquished or extinguished. It is said, however, that the consideration received by the petitioner and the other participating preferred shareholders of the Old Company in such exchange consisted of rights instead of stock in the New Company. That position is equally untenable. Under this provision "solely * * * stock or securities" has to do only with what was acquired or received by the old stockholders - not that which was received or acquired by the New Company. The petitioner received only stock of the New Company. That as a condition of the plan, to entitle him to participate, petitioner was required to contribute $1 per share for each share of old preferred held, does not contradict that fact. The Second Circuit Court of Appeals so held in Securities Co. v. Commissioner, 64 Fed. (2d) 330. The court was there construing "* * * exchanged solely for stock or securities * * *" as that expression was used in section 203 (b) (2) of the Revenue Act of 1924. The shareholders, to participate in a reorganization, were there required to pay $50 per share in addition to depositing the old stock. In answer to the same argument *167 made by respondent here, the court in that case pertinently said: While, strictly speaking, the payment of $50 per share was not an assessment but a voluntary payment made for the privilege of participating in the reorganization, that fact did not deprive the taxpayer of the right to invoke section 203 (b) (2). In DeBlois v. Commissioner, 36 Fed. (2d) 11, a similar payment made by a stockholder in order that he might participate in a reorganization, was held to show an election on his part not to claim a loss under section 202 (a) of the Revenue Act of 1918, and to bring him under section 202 (b) of that Act relating to reorganization. To be sure, the word "solely" did not appear in section 202 (b) of the Revenue Act of 1918, but, as we have already said, that word in the Act of 1924 applied only to the securities received in exchange and not to the property handed over under the plan of reorganization. * * * Respondent then argues that the amendment of section 112 I.R.C., effected by section 121 (b) (1), supra, is not applicable because the "plan of reorganization" was not one described in section 112 (b) as amended by section 121 (a), supra. *168 He argues that the property of the Old Company was not "transferred * * * in exchange solely for stock or securities in * * * [the new] corporation". He points to the fact that the term "exchange" was not mentioned in the plan but that it merely called for the surrender and cancellation of the preferred and common shares of the Old Company. That there was an "exchange" we have no doubt. Despite the wording of the plan, it can not be construed so narrowly and artificially as respondent contends. Realism compels that conclusion. United Gas Improvement Co., 47 B.T.A. 715; affd., 142 Fed. (2d) 216. But, says respondent, if there was such an "exchange" as intended by this section, the only recipients of the consideration therefor were the preferred stockholdrs of the Old Company. This position is equally fallacious and unreal. Whether the old preferred stockholders received the consideration directly from the Old Company or the New Company is immaterial. The only purpose of section 112 (1), supra, was to reduce or eliminate the tax consequences to security holders on certain "exchanges". The field of such "exchanges" was *169 restricted by the act to those that consisted of the relinquishment or extinguishment of the security holders' stock or securities in the old corporation in consideration for stock or securities in the new corporation. The particular mechanics used in effecting the "reorganization" in connection with which such exchange occurred is not important. It is "the net effect to the participating security holders" with which Congress was concerned. Thus the Conference Committee Report [2] reads, inter alia: Section 112 (1) provides that no gain or loss shall be recognized upon the exchange of stock or securities of the old corporation solely for stock or securities in the new corporation. In order to provide uniform treatment in all cases, regardless of the form of the particular transaction, the amendment provides that the relinquishment or extinguishment of the property or interest in the stock or securities of the old corporation in consideration for the acquisition of stock or securities in the new corporation is the exchange which is to be considered the taxable event in a situation of this character. No antecedent or component transaction in connection with such relinquishment *170 or extinguishment and subsequent acquisition is recognized as a taxable event under this amendment. Thus the reorganization may take the form of a transfer of the property of the old corporation to its bondholders upon surrender of the bonds, and a subsequent transfer of the property to the new corporation in exchange for stock of such corporation, or the bonds may be transferred to the new corporation in exchange for stock of such corporation, and subsequently surrendered by the latter in exchange for the property of the old corporation. In either event, the net effect to the participating security holders is an exchange of securities of the old corporation for securities of the new corporation and the transaction is so considered by subsection (1). What happened here was a short-cut. Instead of the Old Company transferring its property to its participating preferred shareholders upon relinquishment of their preferred stock and then those shareholders, in turn, passing the property to the New Company in exchange for its stock, the Old Company transferred its property to the New Company, the old preferred stock was cancelled and *171 the stock of the New Company was issued by it directly to the participating preferred shareholders of the Old Company. Respondent suggests that to satisfy the prerequisites of a reorganization under section 121 (a), supra, whether it be under section 77B of the National Bankruptcy Act or otherwise, the same "continuity of interest" must remain as is required under the other reorganization provisions. See Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462; LeTulle v. Scofield, 308 U.S. 415. This may be so. If it is, that necessary continuity existed here. There were no shareholders in the New Company who had not been shareholders in the Old Company. The fact that common stockholders of the Old Company and the holders of preferred shares in the Old Company who elected not to subscribe under the plan were eliminated, does not contradict the existence of that continuity. Cf. Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179; Palm Springs Holding Corp. v. Commissioner, 315 U.S. 185. We conclude that the amendments to section 112 of the *172 Internal Revenue Code enacted by the 1943 Revenue Act are applicable, and that the transaction involved, as respects the petitioner, was a nontaxable reorganization pursuant thereto. See James F. Curtis, 3 T.C. 648; Conference Committee Report, Revenue Bill of 1943, Amendment 32, cited supra. Since we sustain the petitioner upon that ground, we do not discuss the petitioner's contention that there was a nontaxable reorganization under the Revenue Acts in effect prior to the 1943 amendments. Second Issue - This issue involves the propriety of respondent's action in denying the deduction of the sum of $307.50 paid to a part-time secretary employed by the petitioner in 1941. The petitioner's claim is that the deduction was proper under the provisions of section 23 (a) of the Internal Revenue Code as amended by section 121 of the Revenue Act of 1942. The respondent urges that we deny the deduction, since it appears that the secretary occasionally wrote "personal" letters for the petitioner and no proof has been made as to what portion of the salary is allocable to this purely personal service. The amount involved is less than 1 1/2 per cent of *173 the petitioner's total net income for the year in question. The amount paid would be a reasonable compensation for the work performed for which the petitioner would be entitled to a deduction under the 1942 amendment. Therefore, the petitioner should not be denied the deduction because the secretary performed some incidental "personal" service. Decisions will be entered under Rule 50. Footnotes
1. SEC. 121. REORGANIZATION OF CERTAIN INSOLVENT CORPORATIONS. (a) Nonrecognition of Gain or Loss on Certain Reorganizations. - Section 112 (b) (relating to recognition of gain or loss upon certain exchanges) is amended by inserting at the end thereof the following: "(10) Gain or Loss Not Recognized on Reorganization of Corporations in Certain Receivership and Bankruptcy Proceedings. - No gain or loss shall be recognized if property of a corporation (other than a railroad corporation, as defined in section 77m of the National Bankruptcy Act, as amended) is transferred, in a taxable year of such corporation beginning after December 31, 1933, in pursuance of an order of the court having jurisdiction of such corporation - "(A) in a receivership, foreclosure, or similar proceeding, or "(B) in a proceeding under section 77B or Chapter X of the National Bankruptcy Act, as amended, to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding, in exchange solely for stock or securities in such other corporation." (b) Recognition of Gain or Loss of Security Holders in Connection with Certain Corporate Reorganizations. - Section 112 (relating to recognition of gain or loss) is amended by inserting at the end thereof the following: "(1) Exchanges by Security Holders in Connection with Certain Corporate Reorganizations. - "(1) General Rule. - No gain or loss shall be recognized upon an exchange consisting of the relinquishment or extinguishment of stock or securities in a corporation the plan of reorganization of which is approved by the court in a proceeding described in subsection (b) (10), in consideration of the acquisition solely of stock or securities in a corporation organized or made use of to effectuate such plan of reorganization. "(2) Exchange Occurring in Taxable Years Beginning Prior to January 1, 1943. - If the exchange occurred in a taxable year of the person acquiring such stock or securities beginning prior to January 1, 1943, then, under regulations prescribed by the Commissioner with the approval of the Secretary, gain or loss shall be recognized or not recognized - "(A) to the extent that it was recognized or not recognized in the final determination of the tax of such person for such taxable year, if such tax was finally determined prior to the ninetieth day after the date of the enactment of the Revenue Act of 1943; or "(B) in cases to which subparagraph (A) is not applicable, to the extent that it would be recognized or not recognized under the latest treatment of such exchange by such person prior to December 15, 1943, in connection with his tax liability for such taxable year." (c) Basis. - Section 113 (a) (relating to basis of property) is amended - (1) by inserting after "112 (b) to (e), inclusive," in paragraph (6) the following: "or section 112 (1),"; (2) by inserting after "property permitted by section 112 (b)" in paragraph (o) the following: "or section 112 (1)": * * * * *
(e) Effective Date. - Provisions having the effect of the amendments made by subsection (a), subsection (c) (3), and subsection (d) (2), (3), (4), (5), and (6), shall be deemed to be included in the revenue laws respectively applicable to taxable years beginning after December 31, 1933, but shall not affect any tax liability for any taxable year beginning prior to January 1, 1943. Provisions having the effect of the amendments made by subsection (b), subsection (c) (1) and (2), and subsection (d) (1), shall be deemed to be included in the revenue laws respectively applicable to taxable years beginning after December 31, 1931.↩
2. Revenue Bill of 1943, H.R. 3687, Amendment 32.↩